IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| DUHRING RESOURCE COMPANY, )<br>              Plaintiff, )<br> )<br>and )<br> )<br>PENNSYLVANIA OIL AND GAS )<br>ASSOCIATION, )<br>              Plaintiff-Intervenor )<br> )<br>              v. )<br> )<br>THE UNITED STATES FOREST )<br>SERVICE, et al. )<br>              Defendants )<br> )<br>and )<br> )<br>ALLEGHENY DEFENSE PROJECT, )<br>              Defendant-Intervenor )<br> ) | Civil Action No. 07-0314E |

MEMORANDUM and ORDER

Gary L. Lancaster,
District Judge.                                March 5, 2009

          This is an action in administrative law.  Plaintiff, Duhring
Resource Company, alleges that the United States Forest Service and ten
of its employees have infringed upon its constitutional rights, and
violated various federal and state laws and regulations by imposing
conditions on its oil, gas, and mineral operations within the Allegheny
National Forest.  Duhring seeks injunctive, as well as monetary, relief.

          The federal government defendants, and the defendant-
intervenor Allegheny Defense Project (ADP), have filed motions to

dismiss Duhring's second amended complaint and Pennsylvania Oil and Gas Association's (POGAM) complaint in intervention [doc. nos. 76, 78, 80, 85]. They argue that this court lacks subject matter jurisdiction over many of the claims, and that the remaining counts should be dismissed for failure to state a claim. For the reasons set forth below we dismiss Count I (to the extent it is brought against the individual federal defendants), and Counts II, VI, VII, VIII, and XI of the second amended complaint, which correspond to Counts I, II, VI, and VIII of the complaint in intervention.

I.   BACKGROUND

     A.  Procedural History

          Duhring filed this action against the United States Forest Service (USFS) and ten of its employees[1] on November 8, 2007. Duhring filed an amended complaint in January of 2008, before any defendant had filed a responsive pleading. All defendants moved to dismiss the amended complaint in April of 2008. While the motion to dismiss was pending, Duhring moved for leave to file a second amended complaint. The court granted that motion and Duhring filed its second amended

---

[1] The ten employees are Randy Moore, Kathleen Morse, Robert Fallon, Anthony Scardina, Robert Stovall, Kent Connaughton, Leanne Marten, Robert Gydus, Jason Haberberger, and William Mickle. Mr. Moore and Ms. Morse no longer work for the USFS, and they are not named as defendants in POGAM's complaint in intervention.

2

complaint on June 16, 2008. Also in June of 2008, the court gave POGAM and ADP permission to intervene. POGAM filed its complaint in intervention on June 20, 2008, which is nearly identical in form and substance to Duhring's second amended complaint. The federal government defendants and ADP have moved to dismiss both Duhring's second amended complaint [doc. nos. 76 and 78] and POGAM's complaint in intervention [doc. nos. 80 and 85].

### B. Factual Background

### 1. The Complaints

Duhring's second amended complaint contains twelve causes of action. POGAM's complaint in intervention contains eight. All eight counts of the complaint in intervention are duplicative of Duhring's second amended complaint. As such, although there are two complaints and two motions to dismiss pending in this case, for purposes of this opinion, we will refer only to Duhring's second amended complaint and the motions to dismiss it. Where some distinction between the two complaints is relevant to our discussion, we will note the difference.

Duhring's second amended complaint consists of the following counts:

- Count I - An action under section 706 of the Administrative Procedure Act for violation of the National Forest Management Act, the Weeks Act, USDA

3

Regulations, USFS Directives and Energy Policy Act of 1992 [against USFS and individuals] (Count I of the complaint in intervention).

- Count II and Count XI - Actions under the Quiet Title Act [against USFS] (Counts II and VIII of the complaint in intervention).

- Count III, Count VI and Count X - Actions under section 706 of the Administrative Procedure Act for violation of Pennsylvania common law of trespass and unreasonable interference with enjoyment of servitude [against USFS and individuals] (Counts III, VI, and VII of the complaint in intervention).

- Count IV and Count VII - Actions under section 706 of the Administrative Procedure Act for violation of Duhring's right to procedural due process [against USFS and individuals] (Count IV of the complaint in intervention (against USFS only)).

- Count V and Count VIII - Actions under section 706 of the Administrative Procedure Act for violation of Duhring's right to substantive due process [against USFS and individuals] (Count V of the complaint in intervention (against USFS only)).

- <u>Count IX</u> and <u>Count XII</u> - Actions under the Little Tucker Act for breach of contract related to repair and maintenance of the surface [against USFS] (Not included in the complaint in intervention).

## 2. The Dispute

The allegations of both the second amended complaint and the complaint in intervention involve a long-standing dispute between Duhring, and POGAM, and the USFS as to the conditions under which Duhring, and others like it, can exercise their privately owned oil, gas, and mineral rights (OGM rights) inside the Allegheny National Forest. In fact, although the court has found no reference in the papers to it, POGAM is a named plaintiff in a suit pending in the Erie Division of this court objecting to the USFS's agency action in adopting the Land and Resource Management Plan for the Allegheny National Forest. <u>POGAM, et al. v. USFS</u>, Civil Action No. 08-0162E; <u>see also</u>, "A Legal Analysis Prepared by the Pennsylvania Oil & Gas Association", submitted to Leanne Marten, Forest Supervisor, Allegheny National Forest on July 10, 2008 by POGAM. In that case, POGAM raises many of the same substantive issues regarding the exercise of privately owned OGM rights in the Allegheny National Forest as it advances in this case. Judge McLaughlin recently stayed that action pending issuance of the Record

of Decision by the USFS, and completion of settlement negotiations. POGAM, et al. v. USFS, Civil Action No. 08-0162E, doc. no. 16.

Duhring owns the OGM rights in four pieces of real property located in the Allegheny National Forest. As to three of the parcels, Duhring's OGM rights are outstanding. As to the other parcel, its rights are reserved.[2] The United States of America owns the surface estate in all four of these parcels.

The instant dispute concerns the procedures that must be followed before Duhring may begin OGM development activities in the Allegheny National Forest, and the conditions that the USFS may impose on Duhring during such activities. Duhring contends that it has the unfettered right to proceed with OGM development after giving notice to the USFS. The USFS takes an opposing view under which Duhring has been required to obtain prior approval, in the form of a notice to proceed, and to adhere to certain conditions[3] before beginning, and during, OGM development. Suffice it to say that Duhring believes that the USFS imposed unfair, unjustified, and economically unreasonable conditions on it, in violation of various federal and state laws and regulations,

---

[2] Whether OGM rights are reserved or outstanding depends on how they were created in the granting deeds. Different regulations apply to each type of right.

[3] The details of those conditions are not important for present purposes. However, some examples include imposition of a road use fee, and requirements related to removal of timber from the surface of the land prior to beginning OGM activities.

in order to prevent Duhring from exercising its OGM rights.  The USFS claims that the conditions are lawfully imposed and intended to protect and preserve the Allegheny National Forest.


II.  LEGAL AUTHORITY

A.  Motion to Dismiss - Lack of Subject Matter Jurisdiction

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the subject matter jurisdiction over a plaintiff's claims.  Fed. R. Civ. P. 12(b)(1). "At issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'" Mortenson v. First Federal Savings and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  As it is the party asserting jurisdiction, Duhring "bears the burden of showing that its claims are properly before the district court."  Development Fin. Corp. v. Alpha Housing & Health Care, Inc., 54 F.3d 156, 158 (3d Cir. 1995); see also Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991) ("[w]hen subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion").

In reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court must distinguish between facial attacks and factual attacks. Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006).  When a defendant attacks a complaint on its face, he asserts that considering the allegations of the complaint as true, and drawing all reasonable

7

inferences in favor of the plaintiff, the allegations of the complaint are insufficient to establish a federal cause of action. Mortenson, 549 F.2d at 891. Dismissal is proper only when "the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or ... is wholly insubstantial and frivolous." Kehr, 926 F.2d at 1409 (quoting Bell v. Hood, 327 U.S. 678, 682 (1946)).

When a defendant launches a factual attack on subject matter jurisdiction, as in this case, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Petruska, 462 F.3d at 302. In a factual attack, the court must weigh the evidence relating to jurisdiction, with discretion to allow affidavits, documents, and even limited evidentiary hearings. United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007).

### B. Motion to Dismiss - Failure to State a Claim

In considering a Rule 12(b)(6) motion, we must be mindful that federal courts apply a notice pleading standard, as opposed to the heightened standard of fact pleading. Federal Rule of Civil Procedure 8 "'requires only a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the...claim is and the grounds on which it rests,'" Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, even under this lower notice pleading standard, a plaintiff must do more than recite the elements of a cause of action, and then make a blanket assertion of an entitlement to relief. Rather, a plaintiff must provide a statement "showing that the pleader is entitled to relief." As such, a plaintiff must make a factual showing of his entitlement to relief by alleging sufficient facts that, when taken as true, state a claim to relief that is plausible on its face. Twombly, 127 S.Ct. at 1965; see Wilkerson v. New Media Technology Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) (characterizing Twombly as creating a new plausibility paradigm). The amount of facts needed to satisfy this requirement will depend on the context of the case and the cause of action alleged. Phillips v. County of Allegheny, et al., 2008 WL 305025, at *4 (3d Cir. Feb. 5, 2008).

Therefore, when deciding a motion to dismiss under Rule 12(b)(6), we apply the following rules. The facts alleged in the complaint must be taken as true and all reasonable inferences must be drawn in favor of plaintiff. Twombly, 127 S.Ct. at 1965; Phillips, 2008 WL 305025, at *3; Rowinski v. Salomon Smith Barney Inc., 398 F.3d 294 (3d Cir. 2005). We may not dismiss a complaint merely because it appears unlikely or improbable that plaintiff can prove the facts alleged or will ultimately prevail on the merits. Twombly, 127 S.Ct.

9

at 1965, 1969 n.8.  Instead, we must ask whether the facts alleged raise a right to relief beyond the speculative level and a reasonable expectation that discovery will reveal evidence of the necessary elements.  <u>Id</u>. at 1965; <u>Phillips</u>, 2008 WL 305025, at *6.  In other words, stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required elements of a cause of action.  <u>Phillips</u>, 2008 WL 305025, at *6.  In the end, if, in view of the facts alleged, it can be reasonably conceived that the plaintiffs could, upon a trial, establish a case that would entitle them to relief, the motion to dismiss should not be granted.  <u>Twombly</u>, 127 S.Ct. at 1969 n.8.

However, even if a complaint fails to meet these pleading standards, the court should afford the plaintiff an opportunity to file an amended complaint, unless such amendment would be futile.  <u>Shane v. Fauver</u>, 213 F.3d 113, 116 (3d Cir. 2000).

III.  <u>DISCUSSION</u>

Although it contains twelve individual counts, Duhring's second amended complaint consists of essentially three types of legal causes of action: APA Claims, Quiet Title Claims, and Little Tucker Act Claims.  We address each in turn below.  In summary, we find that the APA claims can proceed against the USFS, but not against the individual federal defendants, and that the Little Tucker Act claims may proceed,

but are limited in amount to $10,000. The Quiet Title Claims are not cognizable, and will be dismissed.

## A. APA Counts

Duhring brings a variety of claims under the Administrative Procedures Act. In fact, eight of the twelve counts of the second amendment complaint, and six of the eight counts of the complaint in intervention, seek relief under the APA. However, all of these separate counts include the common allegation that the USFS violated federal laws and regulations, Pennsylvania common law, and constitutional principles by issuing, and enforcing, the notices to proceed regarding Duhring's OGM rights. We find that such claims are not subject to exhaustion, and can be brought against the USFS, but not against the individual federal government defendants.

As an initial matter, while we agree that Counts III, VI, and X of the second amended complaint sound in tort, we will not dismiss the claims on that basis at this time. We find that some of the allegations related to these counts could support the general claim that the complained of agency action violated Pennsylvania common law. Depending on the relief sought, and how the facts develop, this could be a viable claim under the APA. In this context, the allegations are appropriate. Should the claims prove to go beyond this context as the case proceeds, or should the facts not support such a theory, the court can address the disposal of them at a later stage in the litigation.

Next, we find that Duhring's APA claims are based on final agency action and are not jurisdictionally barred by the exhaustion of administrative remedies theory. In the context of the APA, final agency action indicates that the action has a binding effect on the third party. Bennett v. Spear, 520 U.S. 154, 177-78 (1997); Darby v. Cisneros, 509 U.S. 137, 144 (1993). There is no question that the notices to proceed constituted final USFS action. The USFS enforced the notices to proceed against Duhring by requiring monetary payments, and physically blocking access to the land when their requirements were not met.

Exhaustion is required before seeking judicial review under the APA only where the relevant statutes or agency rules specifically mandate exhaustion as a prerequisite to judicial review. Darby, 509 U.S. at 145-47. The USFS refers to various regulations that purport to require Duhring to have appealed any adverse decisions within the agency before seeking judicial review. 36 CFR §§ 251.82 and 251.102; 36 CFR § 228. However, we find that these regulations do not apply to the complained of agency decisions at issue in this case, and thus, the doctrine of administrative exhaustion does not bar this action.

Section 251.82, which is entitled "Appealable Decisions", "govern[s] appeal of written decisions of Forest Service line officers related to issuance, denial, or administration of the following written instruments to occupy and use National Forest System lands." 36 CFR §

251.82. Defendants rely on subsections 6, 7, and 11 in support of their argument that Duhring was required to appeal the notices to proceed within the Forest Service before proceeding to court. We are not convinced.

Subsection 7, which applies to permits authorizing the exercise of reserved mineral rights, would appear to require an administrative appeal, at least as to the one parcel in which Duhring's OGM rights were reserved, instead of outstanding. However, as Duhring points out, its rights are exempted because of when they were created. We are also not convinced that subsection 6, which refers in turn to Subpart C of 36 CFR § 228, applies to Duhring's OGM rights. Rather, as evidenced by the Forest Service Manual, there is a distinction between mineral rights that are owned by, and disposed of by, the United States, to which those subsections apparently apply, and those that are privately owned, separate and apart from the surface. USFS FSM, Chapter 2830. Nor does the procedure set forth in subsection 11, regarding approval of Surface Use Plans of Operation apply in this case. The notices to proceed were not such documents.

Moreover, we note that Duhring was never informed of, or alerted to, the need to administratively appeal the notices to proceed. Although this is not dispositive, we find it supportive of our conclusion that the notices to proceed were not written decisions to which these CFR sections apply. As such, there was no requirement in

the statutes or regulations that an administrative appeal be filed prior to bringing this action.

Finally, we address the proper scope of Duhring's APA claims, and reject Duhring's attempts to argue that the claims should be construed to support newly advanced legal theories. As we stated above, Duhring has brought eight claims under the APA, alleging constitutional violations, violations of Pennsylvania common law, and violations of federal laws and regulations. The APA grants federal courts broad powers to review agency action, including constitutional violations. 5 U.S.C. §§ 702 and 706. The Act provides a means to obtain non-monetary relief against the United States, a federal agency, or a federal officer acting in an official capacity. <u>Lane v. Pena</u>, 518 U.S. 187, 196 (1996); 5 U.S.C. § 703. The APA does not provide for individual-capacity claims, or money damages. Thus, we dismiss each of Duhring's APA counts to the extent they purport to assert such claims. Furthermore, because the official capacity claims against the individual federal defendants are merely another way of pleading an action against the United States, <u>see</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985), we dismiss the APA claims against the individual federal defendants on that ground as well.

Durhing, and POGAM's, belated attempts to now characterize their APA claims as individual capacity/<u>Bivens</u> actions are futile. The complaint, which Duhring has amended twice in order to overcome

dismissal, speaks for itself. Duhring objects to the conditions that the USFS has imposed on its OGM rights operations, and the USFS's attempts to enforce those conditions. The complaint includes very few allegations mentioning the individual federal defendants. In those few instances, the individuals are faulted for nothing more than actions taken in their official capacities. Regardless, judicial review of agency action under the APA preempts _Bivens_ claims against individuals. _See_ _Nebraska Beef, Ltd. v. Greening_, 398 F.3d 1080, 1084-85 (8th Cir. 2005); _Moore v. Glickman_, 113 F.3d 988, 995 (9th Cir. 1997); _Sky Ad, Inc. v. McClure_, 951 F.2d 1146, 1148-49 (9th Cir. 1991); _Maxey v. Kadrovach_, 890 F.2d 73, 75-76 (8th Cir. 1989); _Gleason v. Malcom_, 718 F.2d 1044, 1048 (11th Cir. 1983). Where Congress has provided a comprehensive framework to address and remedy claims of constitutional violations, non-statutory (_i.e._, _Bivens_) remedies are not available under _Schweiker v. Chilicky_, 487 U.S. 412, 423 (1988); _see also_, _GasPlus, L.L.C. v. U.S. Dept. of Interior_, 466 F.Supp.2d 43, 47-50 (D.D.C. 2006) (_Bivens_ action precluded because review of official's actions, even if they were "unauthorized", was available under APA).

We will not give Duhring an opportunity to amend. We find that such amendment would be futile. The facts of this case cannot support the legal theories now advanced in the briefs. We reject any notion that Duhring should have the opportunity to plead additional facts. Duhring has filed three complaints. It has had every

opportunity to come forth with facts to support each of its legal theories. Duhring's inability to support some of its legal theories, despite having three chances to do so, dispenses with the need to allow such an amendment.

As such, we dismiss Counts VI, VII, and VIII. We also dismiss Count I to the extent it is asserted against the individual federal defendants. The APA counts asserted against the USFS will proceed.


B. Quiet Title Counts

In Counts II and XI, Duhring alleges violations of the Quiet Title Act, 28 U.S.C.A. § 2409a. Under the Quiet Title Act the United States, subject to certain exceptions, has waived sovereign immunity by permitting plaintiffs to name it "...as a party defendant in a civil action...to adjudicate a disputed title to real property in which the United States claims an interest." 28 U.S.C. § 2409a(a).

On this issue, Duhring defers to the arguments of POGAM in opposition to the motions to dismiss. POGAM characterizes the Quiet Title Act claims asserted in its complaint in intervention, and Duhring's second amended complaint, as "a bona fide title dispute to the surface estate of the ANF." [doc. no. 93 at p. 7]. In actuality, the second amended complaint, and the complaint in intervention, allege that USFS has used Duhring's equipment and resources without permission, that

16

USFS has discouraged OGM development in the Allegheny National Forest, and that USFS has diminished Duhring's OGM rights and profits. Apart from the fact that these allegations sound in tort, they reveal that the true nature of Duhring's dispute with the USFS is not regarding ownership of an easement, but rather, the conditions under which Duhring may develop its OGM rights. However, ignoring the allegations of the complaints, and relying on the general premise "...that the Quiet Title Act extends to disputes over easements and mineral rights," POGAM argues that the instant dispute, which relates to an easement, is cognizable under the Act. We disagree.

Although it is true that the Quiet Title Act extends to determinations of a variety of ownership interests in land, including interests that are less than a fee simple estate, it does not extend to disputes over how the owner of a lesser ownership interest and a fee simple interest must interact. The cases relied upon by POGAM actually demonstrate this point. While it is true that both <u>Roth</u> and <u>Kinscherff</u> are Quiet Title Act cases that involve easements, both resolve the issue of whether an easement exists under the law. They do not address how the easement owner and land owner must interact with each other in exercising their respective ownership rights. <u>Roth v. United States</u>, 326 F.Supp.2d 1163 (D. Mon. 2003); <u>Kinscherff v. United States</u>, 586 F.2d 159 (10th Cir. 1978). In fact, the court in <u>Roth</u> specifically rejected the United States's request that it issue a "...declaration that any

valid easements...are subject to Forest Service regulation" because "this case is simply a quiet title action." Roth, 326 F.Supp.2d at 1176-77. That is exactly the type of ruling that POGAM and Duhring are seeking from this court. As POGAM's own cases set forth, such relief is not available under the Quiet Title Act.

The final case that POGAM relies on similarly fails to support the notion that Duhring has asserted valid Quiet Title Act claims in this case. Bedford Associates involved an office building, which the United States leased for its IRS operations. United States v. Bedford Associates, 657 F.2d 1300, 1315 (2d Cir. 1981). The Bowery Savings Bank, which held the mortgage on the building, sought to invalidate the United States's lease, or at least have it declared subordinate to its mortgage, so that it could foreclose on the property. Bedford Associates, 657 F.2d at 1315. In agreeing with the district court that the action could be brought under the Quiet Title Act, the appellate court explained that the government's lease affected Bowery's ability to convey good title in the office building. Id. at 1315-16. Therefore, the case qualified as an action to "...adjudicate a disputed title to real property in which the United States claims an interest." Id. at 1316. That is not the type of dispute that Duhring has raised in this case, nor the type of relief that Duhring seeks.

Duhring seeks not an adjudication of ownership, but a ruling as to the conditions under which it may exercise its OGM rights. This

is aptly demonstrated in papers related to Duhring's motion for partial summary judgment. The papers do not reveal any disputed facts regarding Duhring's ownership of an easement. Rather, the factual disputes arise when the parties discuss who can impose what rules regarding OGM operations. These papers further confirm what the complaints themselves allege, *i.e.*, that there is no dispute regarding ownership.

We grant the motion to dismiss Counts II and XI. In turn, the motion for partial summary judgment is moot.

### C. Little Tucker Act Claims

In Counts IX and XII, Duhring alleges violations of the Little Tucker Act, 28 U.S.C. 1346(a)(2). The Little Tucker Act provides both jurisdiction and a waiver of sovereign immunity for actions for damages against the United States "...founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort..." 28 U.S.C. § 1346(a)(2); De Archibold v. U.S., 499 F.3d 1310, 1313 (Fed. Cir. 2007) (citing Doe v. U.S., 372 F.3d 1308, 1312 (Fed. Cir. 2004)). While the Big Tucker Act grants exclusive jurisdiction to the Court of Federal Claims to render judgment upon claims against the United States exceeding $10,000 in value, 28 U.S.C. § 1491(a)(1), the Little Tucker Act grants concurrent jurisdiction to

the district courts for such claims not exceeding $10,000 in value, 28 U.S.C. § 1346(a)(2).

The USFS challenges Duhring's assertion of subject matter jurisdiction under the Little Tucker Act. Specifically, it argues either that Duhring's claims exceed $10,000, and thus, fall within the exclusive jurisdiction of the Court of Federal Claims, or that they are too vaguely stated to determine whether they fall under the $10,000 cap. The USFS also contends that jurisdiction is lacking under the Act because Durhing has failed to "allege what contract is breach[ed]" or "show the necessary waiver of immunity for this bald assertion." None of these objections is well-founded.

Duhring's prayer for relief under both Count IX and Count XII is for monetary damages in an amount "less than $10,000.00." Duhring characterizes this statement as, and we construe this statement to be, an affirmative waiver of any damages in excess of the concurrent jurisdictional limit. Smith v. Orr, 855 F.2d 1544, 1553 (Fed. Cir. 1988). It is within Duhring's power to waive such damages, which waiver now applies throughout this case. See, Vargas v. U.S., 124 Fed. Appx. 658 (Fed. Cir. 2005). As such, any objection to this court's jurisdiction over the Little Tucker Act claims on the ground that they exceed $10,000 is without merit.

The USFS's argument that this court lacks subject matter jurisdiction because Duhring has failed to "allege what contract is

breach[ed]" suffers a similar fate. There is no requirement in the Little Tucker Act that a specific written contract have been breached, or be identified in the complaint. Rather, under the Little Tucker Act contracts may be express or implied in fact, although not implied in law. 28 U.S.C. § 1346(a)(2); see also Hercules, Inc. v. U.S., 516 U.S. 417, 423 (1996).

In Count IX, Duhring contends, in part, that there is an implied contract to pay OGM rights owners for use of their roads because the USFS charges OGM rights owners to use the USFS's roads. Whatever the ultimate merit of this argument, and setting aside the fact that Duhring's claims for repairs to pipelines that the USFS allegedly damaged sound in tort, rather than contract, the contract allegedly breached has been sufficiently identified by Duhring to overcome a challenge to our jurisdiction on that basis.

Nor does such a challenge warrant dismissal of Count XII. Even though that count is captioned as being a Little Tucker Act claim based on a breach of contract, the allegations reveal that this second Tucker Act claim is founded upon alleged violations of federal statutes and regulations. Again, without judging the ultimate merit of such a claim, the USFS's challenge to it on the ground that the contract breached has not been identified is nonsensical when applied to it. A breach of contract is not the only ground on which a Little Tucker Act claim can be based. Rather, a party can bring a claim under that Act

for violation of "the Constitution, or any Act of Congress, or any regulation of an executive department."

In addition, the USFS itself acknowledges that both of Duhring's Little Tucker Act counts could be based upon the Constitutional Takings Clause. In its brief, the USFS repeatedly refers to Duhring's Little Tucker Act counts as "takings claim[s]". Again, without any statement as to the ultimate merit of such a claim, this would be an alternative basis on which to allow Duhring's Little Tucker Act claims to move past the motion to dismiss stage.

The USFS's final attack, that Duhring has "failed to show the necessary waiver of immunity" is utterly baseless. The Little Tucker Act itself provides that waiver. <u>De Archibold</u>, 499 F.3d at 1313 Provided Duhring's claims are cognizable at this stage of the proceedings under that Act, it follows that Duhring has made a sufficient showing of the necessary waiver of immunity.

We deny the motion to dismiss at to Counts IX and XII.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|                                          |     |                              |
|------------------------------------------|-----|------------------------------|
| DUHRING RESOURCE COMPANY,                | )   |                              |
|                 Plaintiff,               | )   |                              |
|                                          | )   |                              |
| and                                      | )   |                              |
|                                          | )   |                              |
| PENNSYLVANIA OIL AND GAS                 | )   |                              |
| ASSOCIATION,                             | )   |                              |
|              Plaintiff-Intervenor        | )   |                              |
|                                          | )   |                              |
|             v.                           | )   | Civ. Action No. 07-0314E     |
|                                          | )   |                              |
| THE UNITED STATES FOREST                 | )   |                              |
| SERVICE, et al.                          | )   |                              |
|                 Defendants               | )   |                              |
|                                          | )   |                              |
| and                                      | )   |                              |
|                                          | )   |                              |
| ALLEGHENY DEFENSE PROJECT,               | )   |                              |
|              Defendant-Intervenor        | )   |                              |
|                                          | )   |                              |

ORDER

AND NOW, this 5th day of March, 2009, IT IS HEREBY
ORDERED that:

The Motions to Dismiss the Second Amendment Complaint
[doc. nos. 76 and 78] are granted, in part, and denied, in part.
Counts II, VI, VII, VIII, and XI of the second amended complaint are
dismissed, with prejudice. Count I is dismissed to the extent it is
asserted against the individual federal defendants.

The Motions to Dismiss the complaint in intervention
[doc. nos. 80 and 85] are granted, in part, and denied, in part.
Counts II, VI, and VII of the complaint in intervention are

dismissed, with prejudice. Count I is dismissed to the extent it is asserted against the individual federal defendants.

The Joint Motion for Partial Summary Judgment [doc. no. 69] is MOOT.

The Motion for Leave to File a Reply Brief [doc. no. 106] is DENIED, on the ground that it is untimely and prejudicial.

BY THE COURT:

_____, J.

cc:        All Counsel of Record

2